## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAQUILE DESHIELDS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:25-53 |
| ) | |
| vs. ) | |
| ) | Judge Mark R. Hornak |
| M. BROTHERS, et al., ) | Magistrate Judge Patricia L. Dodge |
| ) | |
| Defendants. | |

### REPORT AND RECOMMENDATION

**I.   Recommendation**

It is respectfully recommended that the Motion to Dismiss filed by the Defendants (ECF No. 23) be granted in part and denied in part.

**II.   Report**

   **A.   Relevant Background**

Plaintiff Shaquile Deshields, a prisoner who is currently incarcerated at the State Correctional Institution at Benner Township, Pennsylvania ("SCI Benner Township"), and was previously incarcerated at SCI Pine Grove, brings this pro se civil rights action under 42 U.S.C. § 1983. He asserts several claims related to his conditions of confinement at SCI Pine Grove, specifically, an incident in which he was attacked by another inmate on February 3, 2024 and then sent to the Restrictive Housing Unit ("RHU").

Plaintiff's Amended Complaint raises claims under the Eighth Amendment and violation of his right to due process and equal protection under the Fourteenth Amendment. He names as Defendants the following Department of Corrections ("DOC") personnel: Mark Brothers,

Superintendent of SCI Pine Grove, Captain Brock, Lt. "Townsing,"[1] Bradley,[2] Lt. "Cleningsmith,"[3] J. Sawtelle, Lt. "Gogenire,"[4] Major Shaw,[5] Captain Meier, Corrections Officer 1 "Javis"[6] and "Corrections Officers of the RHU on 2/3/24 at 3 PM 1, 2, 3, 4, 5."

Pending before the Court is a motion to dismiss the Amended Complaint brought by all Defendants except for the unnamed corrections officers and Captain Brock.[7] For the reasons that follow, their motion should be granted in part and denied in part.

B. **Procedural History**

Plaintiff commenced this action by submitting a motion for leave to proceed in forma pauperis on January 13, 2025. (ECF No. 1). After deficiencies were cured, his motion was granted, and the Complaint was docketed. (ECF No. 10). An Amended Complaint was filed on March 25, 2025 (ECF No. 12). Federal question subject matter jurisdiction is based on the civil rights claims asserted, 28 U.S.C. §§ 1331, 1343.

The motion to dismiss (ECF No. 23) was filed on June 10, 2025 and has been fully briefed (ECF Nos. 24, 30).

C. **Facts Alleged in Amended Complaint**

Plaintiff's Amended Complaint alleges that on February 3, 2024, he was assaulted by an unknown inmate in a common area near the correctional officers' desk. According to Plaintiff, only one officer was present to watch 72 inmates. He was hit by a blunt object that he later

---

[1] Defendants identify this individual as "Lt. Jason Townsend."
[2] Defendants identify this individual as "Corrections Superintendent's Assistant Leslie Bradley."
[3] Defendants identify this individual as "Lt. Ronald Klingensmith."
[4] Defendants identify this individual as "Lt. Benjamin Goughnour."
[5] Defendants identify this individual as "Deputy Superintendent Larry Shaw."
[6] Defendants identify these individuals as "Corrections Officer Jacob Jarvie."
[7] No appearance has been entered on behalf of Captain Brock. Nevertheless, for the reasons explained below, Plaintiff has not stated a claim against him.

2

learned was a combination lock and there was no metal detector on the unit. Although he did not retaliate, he was punished by being placed in the restrictive housing unit ("RHU"). (Am. Compl. § IV(B).) Plaintiff claims that this incident would not have occurred if there had been two officers present. He further alleges that the same type of incident had occurred twice before on this unit but no changes in safety protocols were made, and other units have a metal detector. (*Id.* § VII(E)(2).)

According to Plaintiff, he was only seen in the prison medical department for ten minutes after the assault and was then taken to the RHU where he passed out. Only then was he taken to an outside hospital for treatment. He claims to have sustained a fractured cheek and jaw line, damaged eye vessels, more frequent headaches, anxious thoughts and reoccurring flashbacks as a result of the assault. (*Id.* §§ II(D), IV(D), V.) Upon his return to the prison, he was kept in the RHU for almost two weeks. (§ IV(D).)

As to his claims against the various Defendants, Plaintiff alleges that Superintendent Brothers knew that only one officer was watching 72 inmates in a unit without a metal detector. Defendants Townsend, Sawtelle, Klingensmith and Goughnour were aware of two previous assaults with combination locks on this unit but did not change any safety protocols.

With respect Defendants Brock, Shaw, Meier and Bradley, they sat on a Prison Review Committee (PRC) panel that kept him in the RHU and when he tried to file a grievance, they did not change anything. Finally, Defendants Jarvie and the five unidentified correctional officers in the RHU ignored and mocked him when he hit the help button before he passed out. (*Id.* § II(D).)

Plaintiff seeks monetary damages and requests a transfer and placement into a welding program, "a better small option on commissary for a combination lock," and the staffing of 2 officers to each unit. (*Id.* § VI.)

### D. Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

When dismissing a civil rights case for failure to state a claim, a court typically must allow a plaintiff to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would

4

not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

"A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, attached exhibits and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiff has attached to the Amended Complaint the grievances he filed and the responses he received from the institution. Thus, the Court can consider them in reviewing the motion to dismiss.

### E. <u>Analysis</u>

Plaintiff's claims are asserted under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The Amended Complaint alleges violations of the Eighth Amendment, which prohibits "cruel and unusual punishment," including claims of failure to protect and conditions of confinement. Plaintiff has also brought a due process claim and an equal protection claim under the Fourteenth Amendment, which prohibits a state actor from denying "to any person within its

jurisdiction the equal protection of the laws." Defendants challenge each of these claims as insufficient to state a claim for relief.[8]

  1. Official Capacity Claims

Plaintiff has named all of the Defendants in both their official and individual capacities. Defendants argue that any official capacity claims must be dismissed based on Eleventh Amendment immunity. They are correct.

The Supreme Court has stated that, under the Eleventh Amendment, "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal citation omitted). The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429-30 (1997).

---

[8] Defendants also contend that the Amended Complaint "is conclusory and rambling making general claims of wrongful conduct by all parties on either February 3, 2024 or February 3, 2025, without much clarity or specificity." (ECF No. 24 at 4.) As a result, they argue that it should be dismissed for failing to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim," and Rule 8(d)(1), which requires that "each allegation must be simple, concise, and direct." However, the Amended Complaint was clear enough to allow Defendants to respond to the Amended Complaint and the Court concludes that it is able to resolve their motion on the merits. Therefore, it should not be dismissed under Rule 8. Defendants also contend that if the incident occurred in February 2025 as alleged, Plaintiff could not have exhausted his administrative remedies. It is evident, however, that Plaintiff's reference to February 2025 was in error as this action initiated in January 2025. The date of the incident is also clear from the grievances attached to the Amended Complaint.

The DOC is an arm of the state for Eleventh Amendment immunity purposes. *See Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). In their official capacities, the individual defendants are state agents who are entitled to Eleventh Amendment immunity with respect to damage claims. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989) (unless sued for injunctive relief, state officials in their official capacities are not "persons" for purposes of § 1983).

The Court of Appeals for the Third Circuit has held that Eleventh Amendment immunity is subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law, that is, the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed.714 (1908). *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. 42 Pa. C.S. § 8521(b); *Chittister v. Department of Cmty. & Econ. Dev.*, 226 F.3d 223, 227 (3d Cir. 2000). The Supreme Court has also held that § 1983 does not abrogate states' sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979).

As for the *Ex parte Young* exception, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Service Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). In addition to seeking monetary damages, Plaintiff states that he is seeking "a transfer and placement into a welding program due to my unreasonable abrupt transfer after being on the welding waiting list for over a year, for the DOC to give a better small option on commissary for a combination lock, and mandate 2 officers to each unit."

7

(Am. Compl. § VI.) However, he is no longer in SCI Pine Grove and none of the Defendants, all of whom are alleged to be employed at SCI Pine Grove, would be in a position to effectuate the prospective claim sought, i.e., another transfer and enrollment in a welding program. The remaining relief sought, consisting of changing procedures at SCI Pine Grove, would not have any impact on or benefit Plaintiff. *See Spruill v. Gillis*, 372 F.3d 218, 225 (3d Cir. 2004) (because prisoner had been transferred to another prison, his claim for injunctive relief against officials at SCI–Coal was moot). In addition, the PLRA explicitly states that, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Therefore, the *Ex parte Young* exception does not apply.

Thus, with respect to the § 1983 claims in the Amended Complaint against the Defendants in their official capacities, Defendants' motion to dismiss should be granted with prejudice and without leave to amend.

    2. <u>Eighth Amendment Claims</u>

The Eighth Amendment, which prevents the imposition of "cruel and unusual punishment," applies to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660 (1962). Plaintiff raises three potential claims under the Eighth Amendment, including those based on the attack which Defendants failed to prevent, the failure to provide medical treatment following the attack and his transfer to the RHU. Defendants move for dismissal of all claims.[9]

---

[9] Defendants recognize only claims relating to the transfer to the RHU and denial of medical treatment. Nevertheless, a fair reading of the Amended Complaint reveals that Plaintiff is also alleging that he was attacked because only one officer was assigned to watch 72 inmates in a unit without a metal detector despite knowledge of two prior incidents on this unit.

8

        a.   Transfer to RHU

Plaintiff alleges that he was subjected to "unusual punishment" when he was sent to the RHU for being assaulted and other inmates, "like inmate Ovalez, was not." (Am. Compl. § II(B).)

The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000) (citations omitted).

"The Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347.

Defendants argue that "prisoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program." *Podhorn v. Grondolsky*, 350 F. App'x 618, 620 (3d Cir. 2009) (citation omitted). Defendants are correct that the Constitution does not guarantee that a convicted prisoner will be placed in any particular prison. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). *See also Montanye v. Haymes*, 427 U.S. 236 (1976) (prisoner has no due process right to a hearing prior to being transferred to another prison). "Consequently, custodial personnel do not infringe an inmate's liberty interests by placing her in one custodial facility rather than another." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015). Nor does a prisoner have a right to be assigned a particular custody level or security classification. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). *See also Roque v. Gavin*, 2013 WL 3103108, at *2 (M.D. Pa. June 18, 2013) (prisoner who alleged that prison officials denied his request for placement in protective custody or transfer to a safer prison failed to state a due

process claim).

The Supreme Court has held that "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Thus, a transfer of a prisoner to the RHU alone does not violate the Eighth Amendment. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (because the Eighth Amendment applies only when a deprivation results in the denial of "the minimal civilized measure of life's necessities," placement of prisoner in RHU for 112 days alone, without allegation that he was denied life's necessities, did not state a claim for relief). *See also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997); *Gibson v. Lynch*, 652 F.2d 348, 352 (3d Cir. 1981).

Thus, any claim that is based on the transfer of Plaintiff to the RHU—even if it is ultimately found to be unnecessary or inappropriate following the assault on Plaintiff—does not state a claim on which relief may be granted. The fact that other inmates may not have been lodged in the RHU after being involved in unrelated altercations has no bearing on or relevance to Plaintiff's claim that he was subjected to cruel and unusual punishment. In this respect, the motion to dismiss this portion of Plaintiff's Eighth Amendment should be granted with prejudice and without leave to amend.

      b.  Medical Treatment

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs when they provided him with minimal care following the attack and only sent him to an outside hospital after he passed out. Defendants argue that this does not state an Eighth Amendment violation.

"In order to establish a violation of [a prisoner's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials

that indicate deliberate indifference to that need." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (other citation omitted)). As the Court of Appeals has explained:

> the concept of a serious medical need, as developed in *Estelle*, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The [prisoner's] condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

*Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) ("*MCCII"*)).

A prison official acts with deliberate indifference to a prisoner's medical needs only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court of Appeals has held that:

> the *Estelle* "deliberate indifference to serious medical needs" standard is clearly met when a doctor is "intentionally inflicting pain on [a] prisoner[ ]." In *MCCII*, we identified several other scenarios that satisfy *Estelle*. Most relevant to this case are (1) "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' " *MCCII*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)), and (2) "where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' " *id.* (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)) (alterations in original).

*Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)). "Mere disagreements as to the proper medical treatment [do not] support a claim of an eight amendment violation." *MCCII*, 834 F.2d at 346. "Allegations of medical malpractice are not sufficient to establish a constitutional violation." *Spruill*, 372 F.3d at 235 (citations omitted).

11

Defendants do not contend that the injuries sustained by Plaintiff were not a serious medical need. In fact, based on the allegations made, it appears that he had a serious medical need. *See Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) (defining a medical need as serious "if it has been diagnosed by a physician as requiring treatment.")

Instead, Defendants argue that Plaintiff has not alleged that they were deliberately indifferent to these needs because he received care both in the prison and at an outside hospital. However, Plaintiff alleges that he received only ten minutes of treatment at the prison for a fractured cheek and jaw line and damaged eye vessels and was then sent to the RHU. He also claims that it was only after he passed out that he was transported to an outside hospital. These allegations could be construed to support a claim that Defendants ignored his medical needs for non-medical reasons until they were no longer able to do so.

Based on these allegations, Plaintiff has stated a claim of deliberate indifference to his serious medical needs and as a result, this claim should not be dismissed. As appropriate, Defendants may renew this argument after the development of a full record.

c. Failure to Protect Claim

Under the Eighth Amendment, prison officials "must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation and citation omitted). Accordingly, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

To establish an Eighth Amendment failure to protect claim, a plaintiff must show that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm" and (2) prison

officials acted with "deliberate indifference to [his] health or safety." *Id.* at 834. Deliberate indifference is proven by showing that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835.

Although Defendants do not directly address this claim, they argue that Plaintiff fails to identify any previous inmate attacks with combination locks. However, in one of the grievance documents attached to the Amended Complaint, Plaintiff refers to two previous incidents having occurred in the two months preceding the attack on him. (ECF No. 12-1 at 13.) Defendants also contend that Plaintiff does not allege that there was a staff-to-inmate ratio policy that was violated by having one officer supervise 72 inmates. However, they have not explained how Plaintiff, a pro se inmate, would have access to such information at this stage of the proceedings, or if such staffing would or would not represent a potential constitutional violation given the prior incidents alleged by Plaintiff.

The Court concludes that as Plaintiff has sufficiently alleged a failure to protect claim, it should not be dismissed. As appropriate, Defendants may renew this argument after the development of a full record.

3. <u>Due Process Claim</u>

Defendants also argue that Plaintiff's claim that he was denied due process because he was kept in the RHU for nearly two weeks does not state a claim on which relief may be granted.

The Supreme Court has held that states may create liberty interests which are protected by the procedural due process clause, but these interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and

13

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). "Discipline by prison officials in response to a wide range of misconduct falls within the expected [parameters] of the sentence imposed by a court of law." *Id.* at 485. Based on *Sandin*, the Court of Appeals held in *Griffin* that an inmate who was held in administrative custody for 15 months while a charge that he raped a guard was being investigated did not suffer "atypical and significant hardship." 112 F.3d at 706-08. *See also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months of disciplinary confinement did not present an atypical and significant hardship).

Plaintiff's confinement in the RHU for almost two weeks does not represent a liberty interest that would entitle him to relief. As a result, he has not stated a claim for denial of due process for having been confined there under what he alleges were improper circumstances.[10] Therefore, the motion to dismiss should be granted as to Plaintiff's due process claim with prejudice and without leave to amend.

4. Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Claims for equal protection violations are subject to differing levels of scrutiny depending on the status of the claimant. Statutes or actions that substantially burden a fundamental right or target a suspect class must be reviewed under "strict scrutiny," which means

---

[10] In a response to a request to the Superintendent in which Plaintiff asked why he was being kept in the RHU given that he was the victim, someone wrote, "they are just trying to make sure you are safe after being released back to [general population]." (ECF No. 12-1 at 3.)

14

that in order to be valid, they must be narrowly tailored to serve a compelling governmental interest. *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2000).

In his Amended Complaint, Plaintiff bases his equal protection claim on the fact that there was only one officer and no metal detector in his unit. (Am. Compl. § II(B).) This does not state a claim for equal protection, however, as all inmates in his unit were similarly situated and treated alike by being subject to the same level of security.

However, there are other allegations in the Amended Complaint that could be construed as forming the basis for an equal protection claim. Plaintiff has attached his grievance documents to the Amended Complaint. In his grievance, he states that "two other inmates of a different ethnicity" were involved in other altercations but never went to the RHU. (ECF No. 12-1 at 13.) Plaintiff also alleges that although he was sent to the RHU after being assaulted, other inmates, specifically Inmate Ovalez, were not. (Am. Compl. § II(B).) Plaintiff is Black, a suspect class, and thus Defendants' actions must be reviewed under strict scrutiny.[11] Accepting all allegations in the Amended Complaint and its attachments as true, as the Court is required to do when resolving a motion to dismiss, his equal protection claim can be construed as based on different and less favorable treatment because of his race.

As discussed above, however, a transfer of a prisoner to the RHU alone does not violate the Eighth Amendment. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014). There are any number of reasons that an inmate is lodged in the RHU. There are no facts alleged in the Amended Complaint about the other incidents involving those of a different ethnicity or suggests

---

[11] Although he does not explicitly allege this, the Court may take judicial notice of his profile on the inmate locator, https://inmatelocator.cor.pa.gov/#/.

that other than being in a fight, these inmates were similarly situated to Plaintiff. The mere fact that they were not sent to the RHU after an altercation, absent any other facts (such as the nature of the altercation or the role of the inmate in it), is insufficient to state a claim. Moreover, Plaintiff also fails to identify the Defendant(s) whom he claims engaged in any action that violated his equal protection rights, including who made the decision to place him in the RHU and treated him differently than other inmates who were similarly situated. Therefore, Plaintiff has failed to plausibly plead an equal protection claim and it should be dismissed.

    5. Individual Involvement

Defendants contend that Defendants Meier and Shaw should be dismissed because they are not alleged to have had any personal involvement in the events pleaded in the Amended Complaint (they are mentioned only in the caption) and the other seven Defendants are merely lumped together. As explained below, this is not entirely accurate. Nevertheless, as to some of the Defendants, Plaintiff has failed to allege their personal involvement in the events underlying this case.

The Court of Appeals has held that individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Government Officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207.

There are three ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. Liability may attach if the supervisor: (1) directed the

subordinate to take the action in question; (2) had "knowledge of and acquiesced" in the subordinate's unconstitutional conduct, meaning the supervisor knew that his or her subordinate was violating the plaintiff's rights but failed to stop the subordinate from doing so; or (3) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation. *See, e.g.*, *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Rode*, 845 F.2d at 1208. "'Failure to' claims—failure to train, failure to discipline, or, as in the case here, failure to supervise—are generally considered a subcategory of policy or practice liability." *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, 575 U.S. 822 (2015).

Here, the Amended Complaint fails to adequately allege the personal involvement of certain Defendants. Defendants Brock, Shaw, Meier and Bradley are alleged to have been on a PRC panel that kept him in the RHU and denied his grievance. These allegations are insufficient to establish any liability on their part. As an initial matter, merely participating on a PRC panel that made a decision to lodge Plaintiff in the RHU for several weeks does not represent a violation of Plaintiff's constitutional rights. Moreover, "[i]t is . . . well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013). *See also Jefferson v. Wolfe*, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006); *Watkins v. Horn*, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997); *Seldon v. Wetzel*, 2020 WL 929950, at *4 (W.D. Pa. Feb. 6, 2020), *report and recommendation adopted*, 2020 WL 924046 (W.D. Pa. Feb. 26, 2020). "Courts have routinely dismissed civil rights allegations against prison officials whose only knowledge of the alleged violation stemmed from their participation in the grievance process." *Seldon v. Wetzel*, 2020 WL 929950, at *4 (W.D. Pa. Feb.

17

6, 2020), *report and recommendation adopted*, 2020 WL 924046 (W.D. Pa. Feb. 26, 2020). *See also Ramos v. Pennsylvania Dep't of Corr.*, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("It is well established that "the review and denial of the grievances and subsequent administrative appeal conducted does not establish personal involvement by those Defendants in the alleged underlying unconstitutional conduct.")

Plaintiff also claims that Jarvie and the five unnamed correctional officers mocked him when he pushed the help button. But verbal harassment "does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Gannaway v. Berks Cty. Prison*, 439 F. App'x 86, 91 (3d Cir. 2011) (citation omitted). *See also Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012). Thus, allegations that these Defendants mocked Plaintiff fail to state a claim.

At the same time, Plaintiff also alleges that Jarvie and the unidentified correctional officers ignored Plaintiff's serious medical needs when he sought help by pushing the help button, possibly with obvious visual injuries. Assuming, as the Court must, the truth of this allegation, this represents sufficient individual involvement to survive a motion to dismiss.

Plaintiff also alleges that Superintendent Brothers and Defendants Townsend, Sawtelle, Klingensmith and Goughnour knew of a serious safety issue and took no action despite their knowledge of two recent previous incidents of a similar nature. Construing these allegations in the light most favorable to Plaintiff, they are sufficient for purposes of alleging their individual involvement. Therefore, with respect to Defendants Brothers, Townsend, Sawtelle, Klingensmith and Goughnour, the motion to dismiss should be denied. Again, as appropriate, Defendants may renew this argument in a motion for summary judgment based on a fully developed record.

In summary, all official capacity claims, the Eighth Amendment claim based on Plaintiff's transfer to the RHU, the claim related to verbal harassment, and the due process claim should be dismissed with prejudice and without leave to amend. In addition, all claims against Defendants Brock, Shaw, Meier and Bradley should be dismissed with prejudice and without leave to amend. The equal protection claim should be dismissed without prejudice and with leave to amend as the Court cannot conclude that it would be futile to permit such amendment.

In turn, Defendants' motion should be denied with respect to the Eighth Amendment claims based on denial of medical care against Jarvie and the five unnamed RHU correctional officers and the failure to protect against Defendants Brothers, Townsend, Sawtelle, Klingensmith, Goughnour.

### III.   Conclusion

For these reasons, it is respectfully recommended that the Motion to Dismiss (ECF No. 23) be granted in part and denied in part. It is recommended that the following claims be dismissed with prejudice and without leave to amend:

1. All claims against the Defendants in their official capacities;
2. All claims against Defendants Brock, Shaw, Meier and Bradley;
3. The Eighth Amendment claim based on Plaintiff's transfer to the RHU;
4. The due process claim; and
5. The claim against Jarvie and the five unidentified correctional officers for verbal harassment.

It is further recommended that the equal protection claim should be dismissed without prejudice and with leave to amend.

It is further recommended that in all other respects, the motion to dismiss should be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by February 4, 2026. Any party opposing the objections shall file a response by February 18, 2026. Failure to file timely objections will waive the right of appeal.

Date: January 21, 2026                     /s/ Patricia L. Dodge
                                                      PATRICIA L. DODGE
                                                      UNITED STATES MAGISTRATE JUDGE

cc:    SHAQUILE DESHIELDS
        KW6244
        SCI BENNER TOWNSHIP
        301 Institution Drive
        Bellefonte, PA 16823